IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MATTHEW E. GABALDON,

    Plaintiff,

v.                                                        No. 17-cv-0476 SMV

NANCY A. BERRYHILL,
**Acting Commissioner of the Social Security,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 22] ("Motion"), filed on October 16, 2017. The Commissioner responded on November 30, 2017. [Doc. 24]. Plaintiff replied on December 19, 2017. [Doc. 25]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 8]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to provide an adequate reason for rejecting the opinion of the consultative examiner in favor of the opinions of the non-examiners. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was before the ALJ. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207−08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Pursuant to 20 C.F.R. §§ 404.970(b) and

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

416.1470(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision. If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981). Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review. *See id.* Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096. Accordingly, here, the Court reviews the ALJ's decision considering the entire record, including the evidence submitted to the Appeals Council. Tr. 4–5, 436–43, 1228–1317.

2

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

## Procedural Background

Plaintiff applied for supplemental security income and a period of disability and disability insurance benefits on September 15, 2010. Tr. 18. He alleged a disability-onset date of October 15, 2009. *Id.* His claim was denied initially and on reconsideration. *Id.* ALJ Peter M. Keltch held the first of two hearings on May 15, 2012, in Oklahoma City, Oklahoma. Tr. 36–80. Plaintiff appeared by video conference with his attorney. *Id.* (At the hearing, through his attorney, Plaintiff withdrew his request for a hearing on the denial of his SSI claim. In other words, he abandoned his SSI claim. Tr. 41.) Although ALJ Keltch held the hearing, ALJ Trace Baldwin entered the decision on March 7, 2013. Tr. 114–25. ALJ Baldwin reiterated that Plaintiff had withdrawn his request for a hearing on the denial of his SSI claim. Tr. 114, 120. ALJ Baldwin also denied the disability claim on the merits. Tr. 114–120. Plaintiff requested review of ALJ Baldwin's decision. As to the denial of disability benefits, the Appeals Council granted review, reversed ALJ Baldwin's decision, and remanded the disability claim for a new hearing, with certain specific instructions. Tr. 127–29. However, as to the SSI claim, the Appeals Council denied review. Tr. 130–31.

ALJ Barry O'Melinn held the second hearing on September 14, 2015, in Albuquerque, New Mexico. Tr. 19, 81–102. Plaintiff and his attorney appeared by video conference from Santa Fe, New Mexico. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Sandra Trost. *Id.*

ALJ O'Melinn issued his unfavorable decision on December 8, 2015. Tr. 28. He found that Plaintiff met the insured status requirements through June 30, 2013. Tr. 21. At step one he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, October 15, 2009. *Id.* At step two, the ALJ found that Plaintiff suffered from the following

4

severe impairments: diabetes mellitus, obesity, degenerative disc disease, and a disorder of his bilateral feet. *Id.* The ALJ found that Plaintiff's blurred vision was not a medically determinable impairment. Tr. 22. However, he found Plaintiff's anxiety, post-traumatic stress disorder, substance abuse, and alcohol abuse were medically determinable impairments but, considered singly and in combination, were not severe. *Id.* In making his findings regarding Plaintiff's mental impairments, the ALJ discussed the opinions of Dr. Steinman, Dr. Morse, and Dr. VanHoose. *Id.*

Warren M. Steinman, Ph.D., performed the consultative psychological examination on January 19, 2011. Tr. 467. He diagnosed adjustment disorder with anxiety; rule out posttraumatic stress disorder ("PTSD"), chronic; and rule out cannabis dependence. Tr. 469. Dr. Steinman found Plaintiff to be "nervous and anxious." *Id.* Dr. Steinman opined that Plaintiff "may be moderately limited in working with others. He is likely . . . markedly limited in his ability to take supervision. He is likely to have difficulty carrying out the tasks expected of him. He does not seem readily adaptable to change." *Id.*

Em Ward, M.D., Ph.D., performed the consultative physical examination on January 21, 2011. Tr. 461–64. She noted Plaintiff's complaints of paranoia and getting nervous around other, especially crowds. Tr. 461. He became "a little agitated or irritated during the history taking" and required redirection. Tr. 463. Dr. Ward also noted "a lack of attention initially," which resolved over the examination. *Id.* Finally, Dr. Ward's impressions included "multiple psychiatric diagnoses," which she "defer[red] to the mental health assessment regarding ability to function in a work environment." Tr. 464.

On January 31, 2011, Tracey Morse, Ph.D., reviewed the record, including Dr. Steinman's and Dr. Ward's reports. Tr. 488–500. Dr. Morse opined:

> [Plaintiff] report[s] he is ind[ependent] with self-care, prep[aration of] meals, . . . use[s] public transport, shop[s], manage[s] funds, has some trouble getting along with others.
>
> Claim of anxiety is credible per [medical evidence of record]. [Dr. Steinman] and [Dr. Ward] report anxious mood and some intermittent diff[iculties] with concentration. Both report irritability. However, at [Dr. Ward's examination, Plaintiff] was able to focus and improve his interpersonal skills with minor redirection. [Plaintiff] reports some inability to get along with others and diff[iculties] with concentration. [Plaintiff] reports otherwise adequate functioning. Mild impairments in social [functioning] and [in concentration, persistence, and pace] noted. Preponderance of evidence indicates mental impairment is not severe.

Tr. 500.

On April 5, 2011, Thomas VanHoose, Ph.D., reviewed the record and "affirmed" Dr. Morse's determination that Plaintiff's mental impairments were not severe. Tr. 510. In pertinent part, Dr. VanHoose opined:

> [Review] by Dr[.] Morse dated 1/31/11 for adjustment [disorder] with anxiety and [rule out] PTSD and [rule out] cannabis dep[endence]; non-severe. Denied, non-severe 2/1/11.
>
> . . . . All conditions worse as of 10/2010.
>
> A 10/2010 eval[uation] by NM Beh[avioral] Health in file has [a mental status examination]: [Plaintiff]'s appearance and behavior is normal. Speech is pressured. He is anxious[s]. Thought content normal. He is oriented x4. Normal memory, normal attention, insight and judgment fair, mini mental status score of 30/30. GAF 59. Assessed with [generalized anxiety disorder], [obsessive compulsive disorder], PTSD, and [rule out] panic.
>
> Function report and initial and recon very similar and consistent with assessment of non-severe impairme[nt]s. [Dr. Morse's opinion] is reasonable and is affirmed.

Tr. 510.

6

The ALJ rejected Dr. Steinman's opinions that Plaintiff "may be moderately limited in working with others, is likely to have marked limitation in his ability to take supervision, is likely to have difficulty carrying out tasks expected of him, and is not readily adaptable to change." Tr. 23 (citing Tr. 469). The ALJ gave three reasons: "This opinion [1] appears to be based primarily upon the subjective statements made by [Plaintiff] to Dr. Steinman, rather than objective evidence, and [2] is not supported by longitudinal evidence. [3] Subsequent treatment records demonstrate that the claimant's mental health is stable with medication and displays no signs of impairment in mental status examination." Tr. 23 (citing Ex. 27F, 29F, 31F, 35F). The ALJ next proceeded to step three.

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 24. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 24–27. The ALJ found that, through his date last insured, Plaintiff had:

> the RFC to perform light work as defined in 20 [C.F.R. §§ 404.1567(b) and 416.967(b) except [Plaintiff] can only occasionally climb ramps or stairs[;] never climb ladders[,] ropes[,] or scaffolds[;] and occasionally balance. [Plaintiff] must avoid concentrated exposure to operational control of moving machinery, unprotected heights, and hazardous machinery.

Tr. 24. The ALJ included no mental restrictions in the RFC assessment. Nor did the ALJ include any substantive discussion of Plaintiff's mental functioning in assessing the RFC. *See* Tr. 24–27. The lone statement referencing Plaintiff's mental functioning strongly suggests that the ALJ believed Plaintiff's mental functioning to be irrelevant considering that he had already determined the mental impairments to be non-severe at step two.³ Tr. 25 ("The claimant alleges

---

³ This was error because "even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' he must further consider and discuss them as part of his residual functional capacity (RFC) analysis

7

that he is unable to work due to a combination of mental and physical impairments. As discussed above, his mental impairments are found to be nonsevere.").

At step four, the ALJ relied on the VE's hearing testimony to conclude that Plaintiff was able to perform his past relevant work as a telemarketer (Dictionary of Occupational Titles ("DOT") number 299.357-014) as he actually performed it and as it is generally performed. Tr. 27. Ultimately, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date (October 15, 2009) through the date of his decision (December 8, 2015). Tr. 27–28. Plaintiff requested review from the Appeals Council, but that request was denied on February 23, 2017. Tr. 1–5. Plaintiff timely filed the instant action on April 21, 2017. [Doc. 1].

## **Analysis**

The ALJ's three reasons for rejecting Dr. Steinman's opinions are inadequate. The first reason (that the opinions "appear[] to be based primarily upon the subjective statements made by [Plaintiff], rather than objective evidence") is legally improper. The second reason (that the opinions are "not supported by longitudinal evidence") is not supported by substantial evidence. And the remaining reason (that "[s]ubsequent treatment records demonstrate that [Plaintiff]'s mental health is stable with medication and displays no signs of impairment in mental status examination") is inadequate. Tr. 23. The case will be remanded to revisit Dr. Steinman's opinions, which matter in this case because Dr. Steinman assessed mental limitations that were

---

at step four[.]" *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(e), 416.945(e). Moreover, the error was reversible because, as discussed further below, the evidence of record, *see infra* note 5, consistently suggests that Plaintiff suffers from some level of limitation in mental functioning. *Cf. Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (finding error where "[the ALJ] did not engage in any analysis of [the plaintiff's] mental functions and how they may be impacted (or not) by [her] medically determinable mental impairments[,]" but declining to reverse because the "the evidence in this case does not support assessing any functional limitations from mental impairments").

8

more restrictive than the RFC assessment ultimately found by the ALJ. The Court declines to address Plaintiff's other alleged errors at this time.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight he assigns to each opinion and why. *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

In weighing medical opinions, the ALJ generally should accord more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him. § 404.1527(c)(1); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

If the ALJ intends to reject the opinion of a consultative examiner in favor of the non-examining physicians, he must provide a legally sufficient explanation for doing so.

ALJs must consider and weigh opinions of non-treating physicians based on the applicable regulatory factors. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

> (i) *Length of the treatment relationship and the frequency of examination.* Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.
> (ii) *Nature and extent of the treatment relationship.* Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.
> (3) *Supportability.* The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.
> (4) *Consistency.* Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

> (5) *Specialization.* We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> (6) *Other factors.* When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

§ 404.1527(c). "[T]o the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. § [404.1527(c)]."). *Reveteriano v. Astrue*, 490 F. App'x 945, 947 (10th Cir. 2012); *see Sisom v. Colvin*, 512 F. App'x 762, 766–67 (10th Cir. 2013) (reversing where ALJ failed to provide a legally sufficient explanation for adopting the non-examining opinions over an examining opinion).

Here, Plaintiff challenges the ALJ's rejection of Dr. Steinman's consultative opinions in favor of the non-examining opinions. The ALJ first rejected Dr. Steinman's opinions because they "appear[ed] to be based primarily upon the subjective statements made by [Plaintiff] to Dr. Steinman, rather than objective evidence." Tr. 23. Plaintiff argues that this reason is legally improper. [Doc. 22] at 10.

Subjective statements from a claimant are a necessary part of a consultative psychological examination. A consultative psychological examiner should spend enough time listening to the claimant to obtain "a case history" and to understand his "major or chief complaints." 20 C.F.R. § 404.1519n(a)(4) and (c)(1). More to the point, though:

11

> The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective "tests"; those findings "may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)); *Langley*, 373 F.3d at 1122 (same). The ALJ's approach of rejecting Dr. Mynatt's opinion because he based it, in part, on Mrs. Thomas's responses to his psychological tests involving memory and concentration impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data.

*Thomas v. Barnhart*, 147 F. App'x 755, 759–60 (10th Cir. 2005).

Defendant does not argue otherwise. Defendant appears to concede (that the ALJ erred in rejecting Dr. Steinman's opinion because it was based on Plaintiff's subjective statements) because she makes no argument in opposition. *See* [Doc. 24] at 4–7. Although there may be a circumstance in which a psychological consultative examiner relies on a claimant's subjective statements in a way that undermines the doctor's report, this is not it. The Court agrees with Plaintiff that the ALJ erred in rejecting Dr. Steinman's opinions because they were based on Plaintiff's subjective statements.

Next, the ALJ rejected Dr. Steinman's opinions because they were "not supported by longitudinal evidence." Tr. 23. Plaintiff argues that this reason is not supported by substantial evidence because the longitudinal evidence does, in fact, support Dr. Steinman's opinions. [Doc. 22] at 11–12. Certainly, if the evidence of record can support the ALJ's finding, then the Court must defer to the ALJ's conclusion. However, here, it is unclear to the Court what evidence might support the ALJ's reason. The ALJ's decision does not shed light on the question. It is not as if the ALJ's discussion of the evidence suggests what might undermine

12

Dr. Steinman's opinions. *See* Tr. 18–28. For example, the ALJ's discussion of Plaintiff's social functioning is as follows:

> The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant reports that he becomes nervous in public situations, such as while shopping, and his record indicates reported symptoms of extreme anxiety following an attack by a stranger in 2008 (Ex. 5F/3). On the other hand, although the claimant displayed signs of anxiety during some examinations, with medication he was noted to be pleasant and very friendly, with a bright mood (Ex. 4F, 5F, 27F/30, 34). In more recent mental status exams, since the claimant's sobriety, he continued to describe feelings of self-consciousness in public, but demonstrated no objective signs of impairment (Ex. 31F, 35F). The undersigned finds the claimant's social functioning to be mildly limited by his impairments.

Tr. 22. This discussion does not illuminate the basis for finding that the longitudinal evidence failed to support Dr. Steinman's opinion that Plaintiff "may be moderately limited in working with others." In fact, this discussion tends to show that the longitudinal evidence supports Dr. Steinman's opinion. What is more, the Commissioner does not defend the ALJ's reason. Apparently conceding, she offers no response in opposition to Plaintiff's argument. *See* [Doc. 24] at 4–7. The Court agrees with Plaintiff that there is not substantial evidence to support the ALJ's finding that Dr. Steinman's opinions are "not supported by longitudinal evidence." Tr. 23.

Lastly, the ALJ rejected Dr. Steinman's opinions because "[s]ubsequent treatment records demonstrate that [Plaintiff]'s mental health is stable with medication and displays no signs of impairment in mental status examination." Tr. 23 (citing Tr. 1035–87, 1096–97, 1134–38, 1205–13). Plaintiff argues that "stable" does not mean able to work. [Doc. 25] at 2 (citing *Claassen v. Heckler*, 600 F. Supp. 1507, 1511 (D. Kan. 1985)). Nor does stable mean no limitation in mental functioning. The Court has reviewed the records, and they are not

reasonably susceptible to an interpretation that Plaintiff has *no* functional limitation resulting from his mental health problems. For example, the global assessment of functioning ("GAF") scores listed throughout these records range from 60 (indicating moderate symptoms) to 45 (indicating serious symptoms).[4] Tr. 1053 (GAF of 59 of May 10, 2013), 1051 (GAF of 59 on August 16, 2013), 1074 (GAF of 60 in November of 2014), 1048 (GAF of 60 on December 6, 2013), 1045 (GAF of 60 on January 31, 2014), 1035 (GAF of 45 on April 24, 2014), 1096 (GAF of 45 on June 23, 2014), 1135 (GAF of 45 on January 13, 2015), 1211–12 (GAF of 45 on April 14, 2015), 1208–09 (GAF of 55 on July 22, 2015). The ALJ cites to these records as showing that Plaintiff's mental health is stable with medication. That finding is supported by substantial evidence. However, Plaintiff's having "stable" mental health does not undermine the functional limitations assessed by Dr. Steinman. Plaintiff's stable mental health is not a legitimate reason to reject Dr. Steinman's opinions.

The ALJ cites to these records as showing further that there are "no signs of impairment in mental status examination." Tr. 23. To the extent the ALJ found that these records indicate that Plaintiff has no functional mental limitations, the finding is not supported by substantial evidence. As explained above, the records all indicate some level of limitation in mental functioning.[5]

---

[4] A GAF score is a clinician's determination on a scale of 1 to 100 of an individual's overall level of functioning. *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2010). A GAF score of 41-50 indicates "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *Id.* (emphases in original). A GAF score of 51-60 indicates "**[m]oderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." *Id.* (emphases in original).

[5] Although the parties do no address them, the ALJ made two additional findings that bear on the rejection of Dr. Steinman's opinion. The ALJ adopted the opinions of Dr. Morse and Dr. VanHoose over Dr. Steinman's, even though neither Dr. Morse nor Dr. VanHoose had examined Plaintiff. The ALJ gave two reasons for doing so: because Dr. Morse's and Dr. VanHoose's reports "[1] accurately reflect the objective evidence developed by [Dr. Steinman] at the . . . consultative exam in January 2011, and [2] are buttressed by the subsequent mental health

## Conclusion

The ALJ's reasons for rejecting Dr. Steinman's opinion are inadequate. If the ALJ had adopted Dr. Steinman's opinions, the RFC would have been more restrictive. Remand, therefore, is required for the ALJ to reconsider Dr. Steinman's opinions. The Court declines to pass on Plaintiff's other alleged errors at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 22] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**

---

treatment notes demonstrative psychiatric stability on medications." Tr. 23 (citing Ex. 4F, 1047). These reasons do not justify the ALJ's rejection of Dr. Steinman's opinions.

The first reason has no logical connection to why the ALJ would adopt the non-examining opinions over Dr. Steinman's. The second reason cannot support the rejection of Dr. Steinman's examining opinion (that Plaintiff has some limitations in working with others, accepting supervision, carrying out tasks, and adapting to change) in favor of the non-examining opinions (that Plaintiff has no limitations) because the subsequent mental health treatment notes do not demonstrate that Plaintiff has no limitation. The subsequent records could reasonably be interpreted as showing that Plaintiff's mental health was stable on medication. However, the records cannot reasonably interpreted as showing that Plaintiff has *no* mental limitations. *See* 1053 (GAF of 59 of May 10, 2013), 1051 (GAF of 59 on August 16, 2013), 1074 (GAF of 60 in November of 2014), 1048 (GAF of 60 on December 6, 2013), 1045 (GAF of 60 on January 31, 2014), 1035 (GAF of 45 on April 24, 2014), 1096 (GAF of 45 on June 23, 2014), 1135 (GAF of 45 on January 13, 2015), 1211–12 (GAF of 45 on April 14, 2015), 1208–09 (GAF of 55 on July 22, 2015).